## CLINE v WILLIS et

Ohio Appeals, 2nd Dist, Fayette Co

No 226. Decided Nov 22, 1935

E. L. Bush, Washington C. H., for F. O. Cline.

Troy T. Junk, Washington C. H., and J. N. Willis, Washington C. H., for receiver of James Ford.

Max Dice, Washington C. H., for stockholders.

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal from the Court of. Common Pleas of Fayette County, Ohio. The action was instituted in the court below by F. O. Cline as trustee for the stockholders of The Fayette County Bank, seeking a declaratory judgment determining their rights to funds in the hands of the trustee for distribution. Prior to the spring of 1928, The Fayette County Bank, a duly organized and existing Ohio corporation, was engaged in and doing. a general banking business at Washington Court House, Ohio.

Early in 1928 all the assets of said bank which would pass as legal investments were sold to the Commercial Bank of Morris Sharp & Co. and in consideration of the transfer of said assets the purchasers assumed all the debts and liabilities of said Fayette County Bank. At the time of the consummation of said sale there remained a certain amount of assets consisting of small and doubtful papers, second mortgages, real estate and other investments which the Commercial Bank of Morris Sharp & Co. could not, under the law and regulations of the State Banking Dept., take over. By reason of the omitted assets it became necessary for the Fayette County Bank, through its stockholders, to advance $24608.00 to equal the amount of the liabilities.

In the furtherance of the consummation of the sale James Ford, President of the Fayette County Bank, and his brother, William S. Ford, advanced in equal proportion the sum of $24,000.00. Thereafter a number of stockholders made a 100% contribution on their stockholder's liability. In February, 1928, at a special meeting of the stockholders of the Fayette County Bank duly called, they adopted a resolution providing for the liquidation of the assets retained by the Fayette County Bank, which were not taken over in the sale, and at the

same time appointed F. O. Clyne, plaintiff herein, as trustee to take charge of and liquidate all the remaining assets of the Fayette County Bank. The resolution further provided for an advisory committee to act with the plaintiff in fixing values, making compromises or fixing terms of settlements.

The resolution further provided that the trustee, from the funds realized in liquidating said assets, should make distribution as follows:

(1) All obligations incurred in consummating the sale and the transfer of assets sold to Commercial Bank of Morris Sharp & Co.

(2) The necessary expenses incurred in liquidating the assets retained.

(3) To distribute the balance to the stockholders of the Fayette County Bank in proportion to the amount of stock owned by the respective stockholders upon which the assessment ordered by the Superintendent of Banks has been paid at the time of making the distribution.

Thereafter the Fayette County Bank ceased to function and after proper action of the directors and stockholders the charter of said corporation was surrendered.

The remaining assets not included in the sale were turned over to the plaintiff as trustee to be converted into money and distributed as per the terms of the resolution above mentioned.

Among the assets retained and turned over to the plaintiff as trustee for collection were certain notes of M. E. Hitchcock and to which said notes there had been put up as collateral security, certain insurance policies upon the life of the said M. E. Hitchcock.

The plaintiff trustee, under the advice and with the counsel of the advisory committee, paid the premiums of said insurance policies and on or about the 12th day of August, 1932, the said M. E. Hitchcock died and thereupon plaintiff made proof under the policies. Following litigation in which the Superintendent of Banks asserted. certain claims against said fund, on hearing, it was adjudged that the net proceeds of said policy belonged to the stockholders and same was turned over to plaintiff as trustee.

Among the notes received by plaintiff as trustee was a certain promissory note dated March 22nd, 1926, due six months after date, calling for $4800.00 with interest, signed by James Ford, upon which there appeared a credit under date of May

8, 1926, of $300.00 paid by M. E. Hitchcock and on December 31, 1926 interest in the sum of $250.26 paid to date. The insurance fund aggregated approximately $35,000.00 and the indebtedness of Hitchcock and his companies including interest was near this same amount.

On the basis of advancement by James Ford and William S. Ford over and above their 100% stockholder's assessment, distribution was made from the funds in the hands of the trustee to William S. Ford in the sum of approximately $18,000 and to James Ford, former president, a like sum less approximately $6300, which approximated the balance due on the James Ford note of $4800, less credits plus interest. In 1932 James Ford died and on the .... day of October, 1932 his widow, Mary C. Ford was appointed executrix of the estate. Prior to the death of James Ford the defendant, J. N. Willis, was, by the Court of Common Pleas of Fayette County, Ohio, duly appointed receiver of James Ford. Both the receiver and the executrix filed separate answers, in which they aver that the $4800 note and the original thereof was not at any time an asset of the bank, nor a legal obligation in the hands of the plaintiff trustee, for the claimed reason that there was no consideration for its execution. The claim is further made that it was purely an accommodation note and in fact was the debt of M. E. Hitchcock or one of his operating companies. Certain of the stockholders of the former Fayette County Bank, all of whom claim to have paid the 100% assessment on their respective shares of stock, among other things aver that the $4800 note was an asset of the Fayette County Bank and remained such in the hands of the present plaintiff trustee and pray that in awarding the declaratory judgment it be determined as a valid, legal and binding obligation of James Ford and that it be determined a proper set-off against whatever balance might otherwise be due the James Ford interests by reason of his advancement aforesaid. It will be observed from the issues thus stated that the entire controversy in the lower court and in this court is between the executrix of James Ford and the trustee of James Ford through separate answers on one side and stockholders who have paid their 100% assessment on the other.

It is admitted that the $4800 note now in controversy and dated March 22, 1926, was a balance due on an original note for $10,000.00, dated June 30, 1925, due in six months, with interest at 7%. The trial

court on the same record made his finding in favor of the contention on behalf of James Ford and against the stockholders. The entry in the case states that this was upon the ground that there was no consideration to support the note.

The following detailed facts surrounding the negotiations and execution of the original $10,000.00 note will render understandable the facts under which the claimed legal questions arise. As heretofore stated, James Ford, at the time of executing the original note and the renewal thereof was president of the Fayette County Bank and was active in its operation. The plaintiff herein, F. O. Cline, was an assistant cashier, but so far as the record discloses he was not a stockholder. The only witness called, as shown from the record, upon which the case was presented, was this same plaintiff, F. O. Cline. A number of exhibits are introduced, all of which were identified by Mr. Cline. There appears also some agreed statements of fact. During June, 1925, and prior thereto, Mr. M. E. Hitchcock was a customer and a heavy borrower of the Fayette County Bank. He carried on his business individually and also as the H. & C. Motor Company and loans were made in both forms. At this time, the total amount of the Hitchcock loans aggregated about $23,-000.00 and he was making application for an additional loan in the sum of $6,000.00. Hitchcock's obligations to the bank, through direct and indirect liabilities, were such that the additional loan could not be granted to him. In other words, he had borrowed his limit as prescribed under the banking laws. Mr. Ford conceived the idea that in order to accommodate Hitchcock with the additional loan of $6,000 he, Ford, would take up a $10,000.00 note executed by Mr. Hitchcock to the Bank, together with the collateral thereon and give to the bank in place thereof his, Ford's note in the sum of $10,000. This was done and thereafter the $6000.00 loan was made to Hitchcock or to one of his operating companies. The collateral attached to the $10,000.00 Hitchcock note turned over to Mr. Ford was 100 shares of Ortman Motor Car stock, listed at the value of $150.00 per share.

The Ford note to the bank was handled the same as other notes being entered in the discount register under appropriate name and disclosed that same was passed upon by the proper committee. The Hitchcock note and collateral was handed over to Mr. Ford and by him immediately returned to Mr. Cline with instructions to

file with his note to the bank so that when Hitchcock made any payments upon his $10,000.00 note, proper credits could be given. This procedure was followed and as payments were made by Hitchcock the credit was first given upon his $10,000.00 note and immediately thereafter the same credit on the Ford note for the same amount and the amount turned in to the Bank. It appears that shortly after this transaction the Ortman Company was liquidated and from time to time Hitchcock made payments, which were credited as above and the amount of the Ford obligation to the bank reduced to $4800.00. On March 22, 1926 a renewal note was given by James Ford in the sum of $4800.00, and this is the note introduced in evidence in this case. We are very clear █ in our conclusion that consideration is shown and that the note in question is a valid obligation and an asset in the hands of the plaintiff.

We find much discussion in the briefs of counsel on the question as to whether or not the question of consideration is an issue and if in fact the trial court based its conclusion upon this question. The answer of the receiver for Mr. Ford very clearly and positively avers want of consideration. The entry as signed by the court likewise in specific terms makes the finding of want of consideration. Counsel for the stockholders in his motion to amend the entry so as to conform to what he understood the oral opinion of court to be, specifically calls the court's attention to this part of the entry. The motion was overruled and from this we are forced to conclude that the trial court's finding was based upon his conclusion that there was a want of consideration at the time the original note was executed. It is indeed regrettable that Judge Rankin has not favored us with his usual well-considered written opinion.

The technique attending, the manner and method of handling the physical documents and the individual view of the cashier of the bank as to whether or not the note was an asset of the Bank has no evidential value in determining the issue. The fact that Mr. Ford expected Hitchcock to pay off the note and further that all payments were made by Hitchcock does not change the status. The argument that Mr. Ford only acted in the best interests of the Bank in creating a condition by which Hitchcock could borrow more money would not defeat the legal obligation on the note. The Hitchcock $10,000 note was withdrawn from the assets of the Bank and the $10,-

000 note of Ford was substituted and entered on the register as an obligation of Ford The fact that Ford received no money by this transaction does not meet the question of no consideration. The rule in contracts is well recognized that consideration does not necessarily mean an advantage or benefit to the promiser; it may mean a loss or detriment to the promisee. The cited case of **Judy v Louderman, 48 Oh St 563** is in point and supports the theory of consideration. According to the testimony of Mr. Cline the whereabouts of the Hitchcock $10,000 note is not known, at least, it is not in his hands, nor was it turned over to him as an asset.

If there are any inferences to be drawn it would seem probable that Mr. Ford, the active president, withdrew same when the Fayette County Bank went out of business. He was unquestionably the one entitled to it. Had someone not an officer or stockholder of the Bank presented himself and agreed to favor Mr. Hitchcock under the identical steps that were taken in the instant case, could anyone claim that such person would not be liable on a note so executed? There is more reason to hold an active officer of the Bank responsible since the law demands the utmost good faith in his participation in the matter. Abstractly, it would be hard to understand how the granting of a loan of $6000.00 to be added to the obligations of an already heavy borrower of questioned solvency could be helpful to the Bank. We glean from the record that but for the fact that Mr. Hitchcock died, through which a large insurance policy became payable, the loan would probably have been a total loss.

In the amended answer of the receiver of James Ford request is made in the alternative that in the event the court should find that the note is supported by consideration, then it is asked that relief be given to the Ford interests through subrogation. We are unable to find any of the elements supporting subrogation. Mr. Ford's liability to the Bank was not secondary. As his security there was turned over to him the Hitchcock note and the collateral attached. In no sense was the insurance policy held by the Bank involved in this transaction. Through Ford's note, he being primarily liable, this at once denies any right of subrogation.

It is our conclusion that a finding must be made for the answering stockholders, and probably others similarly situated. The costs in this court will be awarded against the receiver of James Ford. Counsel may make calculations in accordance with the views expressed in this opinion and present entry.

Exceptions will be allowed.

HORNBECK and BODEY, JJ, concur.